James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

*Liaison Counsel for Lead Plaintiff Richard*
*Roschke and the Class*

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

*Counsel for Lead Plaintiff Richard Roschke*
*and Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE ECO SCIENCE SOLUTIONS, INC. SECURITIES LITIGATION | Case No.  1:17-cv-03707-RMB-KMW **AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** **JURY TRIAL DEMANDED** |

Lead Plaintiff Richard Roschke ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Eco Science Solutions, Inc., ("Eco Science" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Eco Science; and (c) review of other publicly available information concerning Eco Science.

## NATURE OF THE ACTION AND OVERVIEW

1.     Plaintiff alleges that Defendants[1] engaged in an illegal "pump and dump" scheme. The United States agrees.   Defendant Gannon Giguiere  has been criminally charged with conspiracy and securities fraud, and has posted a substantial bail pending trial. Concurrently, the SEC is pursuing securities fraud charges based on the same allegations in civil court.   Not only have Defendants profited by inflating the price of Eco Science's stock, they also sought to maintain the inflated price by falsely representing that the Company was purchasing a bank.  In fact, this purported purchase was a sham.  In sum, this case presents a particularly egregious example of securities fraud.

2.     This is a class action on behalf of persons and entities that acquired Eco Science's securities between December 2, 2016, and May 19, 2017, inclusive (the "Class Period"), against the Defendants, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

3.     Eco Science is purportedly a bio and software technology-focused company targeting the health and wellness industry.  Eco Science claims its consumer initiatives are centered on education and connecting consumers with various holistic health, wellness and alternative medicine businesses. The Company also claims that its e-commerce platform enables health-and-wellness enthusiasts to locate, access, and connect with health-and-wellness

---

[1] "Defendants" refers to Eco Science Solutions, Inc., Jeffery Lee Taylor, Don Lee Taylor, and Gannon Giguiere, collectively.

businesses and like-minded enthusiasts, and to facilitate the research of and purchasing of eco-friendly products.

4.     On December 15, 2016, a report was published on *SeekingAlpha.com* alleging that Eco Science was operating a "pump-and-dump scheme" whereby the Company was paying a third party to promote the Company's stock, inflating the market price, while the Company's primary products—two mobile apps—were essentially worthless.

5.     On this news, the Company's stock price fell $0.13 per share, or 4.8%, to close at $2.55 per share on December 16, 2016.  The stock price continued to decline as the market absorbed the news during the next two trading days, falling $0.73 per share, or 28.6%, on December 19, 2016, and $0.39 per share, or 21.4%, on December 20, 2016, on unusually heavy trading volume.

6.     On May 5, 2017, the company announced that it "signed a Letter of Intent with Ga-Du Bank, Inc. for the purpose of acquiring full ownership of the Bank in a stock and cash transaction."  The Company claimed that "the Bank's principals have engaged with prospects in the marketplace whom have made expressions of interest, along with preliminary commitments to deposit sums between Three-Hundred and Six-Hundred Million Dollars ($300,000,000 and $600,000,000)."

7.     On May 15, 2017, another report was published on *SeekingAlpha.com* alleging again that Eco Science was operating a pump-and-dump scheme.  The report elaborated further, alleging that Defendant Gannon Giguiere was using Eco Science for his own personal enrichment—noting that the Company had engaged in multiple transactions with entities controlled by Gannon Giguiere which were highly lucrative for those entities, but which would eventually erode the value of the Company's stock.  The report alleged further that Defendant Giguiere had engaged in similar schemes in the recent past.  The report also claimed that the Company's substantial payments for "advertising services" were likely services related to advertising the stock, rather than the Company's products, and pointed out that "themoneystreet.com has been promoting Eco Science stock for months now."  Moreover, with respect to the Company's purported pending acquisition of Ga-Du Bank, the report alleged that

"the internet has never heard of this so-called 'Ga-Du Bank,'" and that it was regulated by a newly founded central bank of the "Southern Cherokee Nation and The Red Fire People," which claimed to be a sovereign nation, but which could also be contacted by email through a Gmail address, and was "not on the list of 566 Native American tribes legally recognized by the US"—all raising the specter that the acquisition was a sham to keep the Company's stock inflated.

8.      On this news, the Company's stock price fell $0.23 per share, or 9.5%, to close at $2.17 per share on May 16, 2017.

9.      On May 19, 2017, the SEC issued a release announcing that it had "temporarily suspended trading in the securities of Eco Science" due to "concerns regarding the accuracy and adequacy of publicly disseminated information concerning, among other things, Eco Science's proposed acquisition of Ga-Du Bank, Inc." The SEC further stated that the suspension would terminate on June 5, 2017.

10.      On June 6, 2017, when the Company's stock began trading again, it closed at $0.65 per share, which was a decline of approximately $1.72 per share, or 72.5%, from the Company's closing price of approximately $2.37 on May 19, 2017.

11.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company was using advertising funds to promote the Company's stock; (2) that the Company's mobile app products were essentially worthless; (3) that the Company engaged in a series of transactions intended to enriching Defendant Gannon Giguiere at the expense of the investing public; (4) that Ga-Du Bank was operated by the Southern Cherokee Nation and The Red Fire People Central Bank; (5) that the Company disseminated false information concerning, among other things, Eco Science's proposed acquisition of Ga-Du Bank; (6) that, as such, the Company was operating a pump-and-dump scheme; and (7) that, as a result of the foregoing, Defendants' statements about Eco Science's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

12.      As a result of Defendants' wrongful acts and omissions, and the precipitous

decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.   Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

16.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

17.     Plaintiff Richard Roschke purchased Eco Science securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

18.     Defendant Eco Science Solutions, Inc. is incorporated in Nevada and its headquarters are in Makawao, Hawaii.   Eco Science's common stock trades on the OTCQB under the symbol "Eco Science."

19.     Defendant Jeffery Lee Taylor was the Chief Executive Officer ("CEO") of Eco Science at all relevant times.

20.     Defendant Don Lee Taylor was the Chief Financial Officer ("CFO") of Eco Science at all relevant times.

21.     Defendant Gannon Giguiere ("Giguiere") was the President of Separation Degrees – One, Inc, ("SDOI") and the Managing Member of Phenix Ventures, LLC—two companies that engaged in transaction with Eco Science designed to enrich Giguiere.

22.     Defendants Jeffery Lee Taylor and Don Lee Taylor, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Eco Science's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Eco Science is purportedly a bio and software technology-focused Company targeting the health and wellness industry. Eco Science claims its consumer initiatives are centered on education and connecting consumers with various holistic health, wellness and alternative medicine businesses. The Company also claims that its e-commerce platform enables health-and-wellness enthusiasts to locate, access, and connect with health-and-wellness businesses and like-minded enthusiasts, and to facilitate the research of and purchasing of eco-friendly products.

### Materially False and Misleading
### Statements Issued During the Class Period

### 1.     The "Pump and Dump" Scheme

24.     The Class Period begins on December 2, 2016. On that day, the Company filed

its quarterly report with the SEC on Form 10-Q for the period ended October 31, 2016. Therein, the Company, in relevant part, stated:

> During the nine months ended October 31, 2016 the Company received invoices for advertising services from SDOI totaling $1,271,274 and further received invoices for monthly project and planned technical development/maintenance, production and staging server administration, ongoing marketing services and monthly advertising management services totaling a cumulative $322,000.
>
> …
>
> We have recently changed the focus of our business to operate in the eco-friendly technology sector using social media sites and offering apps to generate advertising revenues and download fees. The Company's need for ongoing capital by way of loans, sale of equity and/or convertible notes is expected to continue during the current fiscal year until we can establish revenues from operations.

25.     The above statements identified in ¶24 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company was using advertising funds to promote the Company's stock; (2) that the Company's mobile app products were essentially worthless; (3) that the Company engaged in a series of transactions intended to enriching Defendant Gannon Giguiere at the expense of the investing public; (4) that, as such, the Company was operating a pump-and-dump scheme; and (5) that, as a result of the foregoing, Defendants' statements about Eco Science's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

26.     Specifically, on January 1, 2016, Defendant Giguiere entered into a letter agreement with Separation Degrees Online, Inc. ("SDOI") purportedly to provide development, licensing, and other services for the Company's initiatives. In fact, the "marketing support" that the SDOI provided consisted of promotion of the Company's stock on TheMoneyStreet.com. The Company paid for SDOI's "services" with common stock. The Company's own filings demonstrate that SDOI was paid only for pumping up the value of Eco Science stock. The Company's Form 10-K for the year ending January 31, 2017, filed with the SEC on May 1, 2017, disclosed that $1,720,914 of the $2,061,506 (approximately 83%) worth of stock paid to

SDOI was for advertising and promotion services, while the balance of $340,592 (approximately 17%) was paid for purported "technology, licensing and marketing fees."

27. Throughout 2016, Defendant Giguiere deposited in brokerage account(s) approximately 8,000,000 shares of the Company's common stock, that he caused to be issued purportedly pursuant to its "2016 Equity Incentive Plan." In making these deposits, Defendant Giguiere repeatedly falsely represented that not an affiliate of the Company and that he was not aware of any non-public material adverse information about the Company. For instance, in filling out a "Stock Promotion Certificate" on December 29, 2016, Defendant Giguiere, in response to a question ""Were you aware of the promotional activity in the issue you wish to deposit or are offering for sale?," he checked "no" and then falsely stated, "I am not involved in any promotional activity whatsoever." Defendant Giguiere, in fact, knew, or was at least reckless in not knowing, that these statements were materially false and misleading because he knew that he was promoting the Company on TheMoneyStreet.com, a website that he owned and/or controlled.

28. Throughout 2016, Giguiere recommended Eco Science's stock—a company with zero revenues and an accumulated deficit of more than $43 million by January 31, 2017—on TheMoneyStreet.

29. TheMoneyStreet published at least two multi-page articles titled "[the Company] and the 2016 Elections" and "Is This the Next Big Stock for 2016[?]" The first article claimed, among other things, that "[i]t's typically been true that most industries will not see much movement during an election year. . . . BUT once in a while, there are a few outliers that challenge this thought. AND when they do, they merit a closer look. Eco Science Solutions just may be that outlier to bring the returns you are seeking during this window of time."

30. The second article claimed, among other things, that "Eco Science seems to be taking a page out of Amazon.com's playbook" and that "[i]t's eerily similar to how Amazon started. . . . If you take a look at Eco Science's business model, one could see the similarities to Amazon's strategy."

31. Neither article disclosed that Giguiere owned TheMoneyStreet, that he controlled

Eco Science, or that he was intending to and/or actively liquidating his Eco Science stock into the market.

32.     In fact, as of March 2016, TheMoneyStreet's "Disclaimer" page made no mention of Giguiere and affirmatively misrepresented that "[a]rticles on our website represent independent financial commentary. The content is provided by independent authors via a common carrier platform and do not necessarily represent the opinions of our website." Giguiere knew, or was at least reckless in not knowing, that those statements and omissions were false and misleading because Giguiere controlled TheMoneyStreet and the website's authors were not independent. At no timw did the Disclaimer page disclose that Giguiere controlled all of SDOI, TheMoneyStreet, and Eco Science, and that he was actively selling shares of Eco Science.

33.     Beginning in May 2016, Defendant Giguiere began wiring a portion of the proceeds of his stock sales to a third party, who in turn wired the money to the Company's bank account. The other Individual Defendants then paid themselves $5,000 per month out of the Eco Science account. Because Eco Science earned no revenues, the third party's deposits of the proceeds of Defendant Giguiere's sales of the Company's stock were the Company account's primary funding source, and thus the source of the other Individual Defendants' salaries.   In other words, and upon information and belief, Defendant Giguiere used the proceeds of his sales of the Company's stock to pay the other individual defendants to act as nominal officers of the company.

34.     On December 15, 2016, a report was published on *SeekingAlpha.com* alleging that Eco Science was operating a "pump-and-dump scheme" whereby the Company was paying a third party to promote the Company's stock, inflating the market price, while the Company's primary products—two mobile apps—were essentially worthless.   The report, in relevant part, stated:

> Eco Science Solutions (OTC:Eco Science) is a pump-and-dump scheme with a 100 percent downside. It is simply dumbfounding how Eco Science has been able to garner an enterprise value of around $77 million with a portfolio of assets that has seemingly little to no value.

**The Pump**

A financial media company called The Money Street (TMS) published a series of articles on Eco Science . . . going so far as saying that Eco Science has the **potential to become the next Amazon (NASDAQ:AMZN) or Uber (Private:UBER) of the cannabis industry**.

. . .

TMS gets compensated between $25,000 and $150,000 to pump up stocks like Eco Science... and looking at the stock chart below, Eco Science has been pumped to the hilt . . . .

**So... What Does Eco Science Do?**

Eco Science is tackling both the health and wellness industry and the cannabis market. By tackle, I mean the following: Developing two YouTube channels, which so far have a **COMBINED** subscriber base of six people; and managing two mobile apps, both of which have between 100 to 500 downloads on the Android market, and one of which has a five-star review written by some guy who just so happens to share the same name as Eco Science's chief financial officer.

The growth story largely comes from Eco Science's "Herbo" and "Fitrix" apps. Herbo uses the smartphone's GPS tracker to "help you find MMJ dispensaries, smoke shops, legal doctors, clinics, and delivery services in your area...". According to Eco Science, the app has over 14,000 locations that make up the marijuana smoke chain.

The other app, Fitrix, "helps you keep track of your day-to-day fitness habits and routines." This app has features such as a BMI calculator, fitness radio, weight loss calculator, a daily log, and other generic features. According to an angry reviewer on the app store:

> "This app has almost useless levels of functionality - for the parts that work. **It seems more of a developer's first learning app than anything meant to be used**... only plus is it's free so it can't hurt your wallet."

. . .

**Valuation and Conclusion**

The financial health of Eco Science is the nail in the coffin. For starts, Eco Science has not been able to generate **ANY** sales, and as a result, the company has burned through $12.5 million in shareholder capital since inception!

With only $70K in cash and almost $900K in payables on the balance sheet, the

company will continue to cling to the capital markets for survival. An annual cash burn rate of +$200K also does not help.

Since it looks like the company will have no hope in successfully generating cash flow to support its significant debt load, my target price for Eco Science is $0, or 100 percent down from the stock's current levels.

35.     On this news, the Company's stock price fell $0.13 per share, or 4.8%, to close at $2.55 per share on December 16, 2016.   The stock price continued to decline as the market absorbed the news during the next two trading days, falling $0.73 per share, or 28.6%, on December 19, 2016, and $0.39 per share, or 21.4%, on December 20, 2016, on unusually heavy trading volume.

36.     On May 15, 2017, another report was published on *SeekingAlpha.com* further alleging that Eco Science was operating a pump-and-dump scheme.   The report elaborated further, stating, in relevant part:

**Summary**

- Thanks to a small float and an ongoing stock promotion, Eco Science Solutions has been up over 700% over the last twelve months.

- Today, however, the size of its float has exploded overnight as a registration statement for 14 million newly issued shares has been declared effective.

- The person indirectly holding those shares has previously been CEO of Eventure, a publicly traded company with an uncanny number of similarities to Eco Science Solutions.

- Eventure's stock price dropped from 3.50 into the triple zeroes in 2014 after a series of toxic financing deals. Eco Science Solutions has now obtained identical toxic financing.

- I believe history will repeat itself and Eco Science Solution's stock will shortly follow Eventure's down the drain.

**Introduction**

. . .

In this article, I'll argue the company, as well as its management, are irrelevant and merely part of a vehicle that was set up to transfer shares to a third party. And in this case, that particular third party has pulled off an almost identical scheme

just a few years ago, with that stock now trading at zero.

. . .

### 2016-2017: Eco Science Solutions

*Eco Science and Giguiere's Separation Degrees*

After the IPO of Separation Degrees - One fell through, Giguiere seems to have changed his plans. He no longer tried to IPO his own company, and instead appeared to change his focus to a company that's already listed. In January of 2016, Separation Degrees signed a "technology licensing and marketing support agreement" with an obscure, illiquid publicly traded entity called Eco Science Solutions, trading under the ticker Eco Science. A majority stake in this company had (not coincidentally) just been bought by two brothers from Hawaii one month before . . . The agreement between Eco Science and Separation Degrees entailed, among others, for the third time this article, the sale of a mysterious "software platform."

Over 2016, the collaboration between Eco Science and Separation Degrees resulted in (again) two, very basic apps being brought to market, Herbo and Fitrix. Both apps are free, both are extremely basic (I personally tried Fitrix: by far the most impressive thing it does is offer an ability to calculate your Body Mass Index) and both are being downloaded or used by virtually nobody.

During 2016, Separation Degrees has send invoices to Eco Science totaling *over $2 million*. This includes $1.8 million in "advertising services." I have no idea what exactly was advertised. It surely weren't the apps, as even Google doesn't seem to know what, for example, the Fitrix app even is.

. . .

But maybe Separation Degrees didn't advertise the apps on behalf of Eco Science, but instead advertised its stock. The website themoneystreet.com has been promoting Eco Science stock for months now. Coincidentally (or not), that same website also used to promote EVTI stock.

. . .

Eco Science and Separation Degrees initially agreed invoices would be paid not in cash (which Eco Science doesn't have), but instead would be paid in shares. Later, both parties agreed to settle all outstanding invoices from 2016 by Eco Science issuing 4 million shares to Giguiere's Separation Degrees. At the current market price, these shares are worth about $10 million. Not a bad deal at all considering the original invoices amounted to about $2 million. However, it's important to realize these shares cannot legally be re-sold in the open market without a valid S-1 registration statement being approved by the SEC.

*Eco Science and Giguiere's Phenix Ventures*

In January of 2017, Eco Science also signed an Equity Purchase Agreement with an entity called Phenix Ventures LLC. By now, anyone reading this article will not be surprised that Phenix Ventures is ALSO in fact owned by Gannon Giguiere.
. . .
The agreement states Eco Science will sell to Phenix ten million shares of the company's stock, at a price "equal to 83% of the lowest volume weighted price for the ten consecutive trading days immediately following the date on which the applicable Put notice is delivered to Investor."

Such an agreement is a fine example of toxic financing. Phenix gets to buy stock at a discount to the market price, sell those shares for a profit, which makes the share price fall, where Phenix is again able to buy at a discount, etcetera. Actually, it's the exact same type of financing that tanked the Eventure Interactive share price to zero.

37.     On this news, the Company's stock price fell $0.23 per share, or 9.5%, to close at

$2.17 per share on May 16, 2017.

## 2.     The Sham Ga-Du Bank Transaction

38.     On May 5, 2017, the Company issued a press release entitled "Eco Science

Solutions, Inc. Signs Letter of Intent to Acquire Specialty Banking Operation."   Therein, the

Company, in relevant part, stated:

MAUI, HI--(Marketwired - May 5, 2017) - Eco Science Solutions, Inc. (OTCQB: Eco Science), an eco-technology Company providing solutions to the multi-billion-dollar health, wellness and alternative medicine industry, today announced that it has signed a Letter of Intent with Ga-Du Bank, Inc. for the purpose of acquiring full ownership of the Bank in a stock and cash transaction.

Upon the closing of the transaction, Eco Science will operate the Bank as a wholly-owned subsidiary of Eco Science Solutions, Inc. Eco Science will own and operate a financial banking division providing payment processing, cash management and financial services to its customers in the cannabis industry.

Additionally, the Bank's principals have engaged with prospects in the marketplace whom have made expressions of interest, along with preliminary commitments to deposit sums between Three-Hundred and Six-Hundred Million Dollars ($300,000,000 and $600,000,000). These amounts are currently being projected to be deposited within the first sixty to one-hundred-eighty days following the acquisition of the Bank by Eco Science.

"All parties involved are enthusiastic about the Bank's potential to financially serve the cannabis marketplace. Current business owners working in medical

marijuana are doing a tremendous job, but are truly in need of formal banking services so they can soundly manage their business finances," stated John Lewis, who is both the current president of the Bank and a Governor of the Central Bank of SCNRFP. Mr. Lewis continued with, "By combining Ga-Du Bank with Eco Science Solutions, we see how our synergies will create an important financial institution to serve a category that is in need of a fully integrated vertical product suite."

"Our entire team is thrilled by the prospect of the acquisition of the Ga-Du Bank by Eco Science," said Andy Tucker, Senior Advisor to of Ga-Du Bank. Mr. Tucker continued, "We believe that in joining forces with the Eco Science team, we can deliver a comprehensive suite of financial products that addresses the current needs of currently what is a cash-driven industry, allowing Eco Science to become a break-out leader for the sector."

"It has been our vision from day one that, in order to fully service the cannabis industry and execute on our business plan, we needed to be creative in securing and offering a banking platform that further differentiates us from everyone in our category," stated Jeff Taylor, Chief Executive Officer of Eco Science Solutions, Inc. Mr. Taylor continued, "The deal with Ga-Du Bank is a game-changer for not only Eco Science, but everyone in the cannabis industry. This new division of our Company will put us years ahead of our goal to create a full-service marketplace among growers, suppliers, distributors, retailers and consumers."

39.    The above statements identified in ¶38 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that Ga-Du Bank was operated by the Southern Cherokee Nation and The Red Fire People Central Bank; (2) that the Company disseminated false information concerning, among other things, Eco Science's proposed acquisition of Ga-Du Bank; and (3) that, as a result of the foregoing, Defendants' statements about Eco Science's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

40.    On May 15, 2017, seekingalpha.com published a report that stated in relevant part:

On January 26th, Eco Science filed with the SEC an S-1 registration statement. These registration statements are usually declared effective by the SEC within weeks, but on this occasion, it took close to four months, and two amendments.

As the Eco Science share price began to slide during that unexpectedly long waiting period, the company made ever more desperate attempts to keep traders interested. This included a press release saying the company had signed a "Letter

of Intent" to buy a bank, with supposedly "commitments" from prospects" "to deposit sums between $300 million and $600 million."

Sounds good? Well, the internet has never heard of this so-called "Ga-Du Bank," and it's regulated by (or, in fact, is; it's all a bit confusing to say the least) the newly founded Central Bank of the "Southern Cherokee Nation and The Red Fire People." Claiming to be a sovereign nation based on an 18th century US Supreme Court ruling (and quite possibly the only government in the world you can contact per e-mail through a Gmail-address), it's not on the list of 566 Native American tribes legally recognized by the US.

Apparently, even Eco Science itself wasn't too impressed: while it did send out a PR, it never filed an 8-K with the SEC, which is an obligation to public companies when they have material news to report. I agree with the company the banking business is immaterial (and, besides, of a questionable legality, but I'll leave that to the experts), but is most of all a poor attempt to distract investors from impending doom.

### Disclosures at the End of the Class Period

41.     On May 19, 2017, the SEC issued a release announcing that it had "temporarily suspended trading in the securities of Eco Science" due to "concerns regarding the accuracy and adequacy of publicly disseminated information concerning, among other things, Eco Science's proposed acquisition of Ga-Du Bank, Inc." In greater part, the SEC stated:

> The Securities and Exchange Commission ("Commission") announced the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of 1934 (the "Exchange Act"), of trading in the securities of Eco Science Solutions, Inc. ("Eco Science"), of Malawea, Hawaii at 9:30 a.m. EDT on May 22, 2017, and terminating at 11:59 p.m. EDT on June 5, 2017.

> The Commission temporarily suspended trading in the securities of Eco Science because of concerns regarding the accuracy and adequacy of publicly disseminated information concerning, among other things, Eco Science's proposed acquisition of Ga-Du Bank, Inc. This order was entered pursuant to Section 12(k) of the Securities Exchange Act of 1934 (Exchange Act).

> The Commission acknowledges FINRA's assistance in this matter.

> The Commission cautions broker-dealers, shareholders, and prospective purchasers that they should carefully consider the foregoing information along with all other currently available information and any information subsequently issued by the company.

> Further, brokers and dealers should be alert to the fact that, pursuant to Rule 15c2-11 under the Exchange Act, at the termination of the trading suspension, no

quotation may be entered unless and until they have strictly complied with all of the provisions of the rule. If any broker or dealer has any questions as to whether or not he has complied with the rule, he should not enter any quotation but immediately contact the staff in the Division of Trading and Markets, Office of Interpretation and Guidance, at (202) 551-5777. If any broker or dealer is uncertain as to what is required by Rule 15c2-11, he should refrain from entering quotations relating to Eco Science's securities until such time as he has familiarized himself with the rule and is certain that all of its provisions have been met. If any broker or dealer enters any quotation which is in violation of the rule, the Commission will consider the need for prompt enforcement action.

42.     On June 6, 2017, when the Company's stock began trading again, it closed at $0.65 per share, which was a decline of approximately $1.72 per share, or 72.5%, from the Company's closing price of approximately $2.37 on May 19, 2017.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Eco Science's securities between December 2, 2016, and May 19, 2017, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Eco Science's common stock actively traded on the OTCQB. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Eco Science shares were traded publicly during the Class Period on the OTCQB. As of April 28, 2017, Eco Science had 45,357,572 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Eco Science or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.      Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

47.      Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)      whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Eco Science; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

48.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

49.      The market for Eco Science's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Eco Science's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Eco Science's securities relying upon the integrity of the market price of the Company's securities and market information relating to Eco Science, and have been damaged thereby.

50.      During the Class Period, Defendants materially misled the investing public,

CLASS ACTION COMPLAINT

thereby inflating the price of Eco Science's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Eco Science's business, operations, and prospects as alleged herein.

51.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Eco Science's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

52.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

53.     During the Class Period, Plaintiff and the Class purchased Eco Science's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## GOVERNMENT INVESTIGATIONS AND RESULTING CRIMINAL AND CIVIL CHARGES

54.     On June 29, 2018, the Department of Justice charged Individual Defendant Giguiere with four counts of conspiracy and securities fraud (the "Indictment"). In addition to other crimes, Defendant Giguiere was charged with what was effectively a "pump-and-dump" scheme with respect to the Company's stock. The Indictment alleged that Defendant Giguiere "obtain[ed] a material degree of control over [the Company], including by obtaining significant blocks of [the Company's] stock." The Indictment further charges that Defendant Giguiere concealed his substantial control of the Company from the brokerage firms with which he deposited the Company's stock. In fact, he falsely represented to a brokerage firm that he was "not involved in any promotional activity whatsoever."

55.     The Indictment charges that Defendant Giguiere "would promote, or cause the promotion of, [the Company] and its stock on TheMoneyStreet.com in order to artificially avoid the deflation of, maintain, and inflate the share price of [the Company's] stock." The Indictment asserted that on January 21 and March 30, 2016, Defendant Giguiere issues several press releases touting the Company's inventive new products.

56.     The Indictment further alleges that Defendant Giguiere would sell the Company's stock at inflated prices, thereby enriching himself, without ever disclosing his substantial ownership of the Company and/or his covert efforts to promote the stock without disclosing his relationship with the Company. In other words, Defendant Giguiere knowingly and intentionally engaged in a classic fraudulent "pump and dump" scheme that brought him more than $8,500,000 in fraudulently obtained gains.

57.     Defendant Giguiere was arrested on July 5, 2018, and arraigned the following day. On July 11, 2018, Defendant Giguiere was released on $2,000,000.00 bond.

58.     On July 6, 2018, the SEC instituted civil proceedings against Defendant Giguiere for securities fraud consistent with the allegations herein

### SCIENTER ALLEGATIONS

59.     As alleged herein, Defendants acted with scienter since Defendants knew that the

public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Eco Science, their control over, and/or receipt and/or modification of Eco Science's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Eco Science, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

60.     The market for Eco Science's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Eco Science's securities traded at artificially inflated prices during the Class Period. On January 20, 2017, the Company's stock price closed at a Class Period high of $4.58 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Eco Science's securities and market information relating to Eco Science, and have been damaged thereby.

61.     During the Class Period, the artificial inflation of Eco Science's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Eco Science's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Eco Science and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class

Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

62.   At all relevant times, the market for Eco Science's securities was an efficient market for the following reasons, among others:

(a)   Eco Science stock met the requirements for listing, and was listed and actively traded on the OTCQB, a highly efficient and automated market;

(b)   As a regulated issuer, Eco Science filed periodic public reports with the SEC and/or the OTCQB; and/or

(c)   Eco Science regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

63.   As a result of the foregoing, the market for Eco Science's securities promptly digested current information regarding Eco Science from all publicly available sources and reflected such information in Eco Science's stock price. Under these circumstances, all purchasers of Eco Science's securities during the Class Period suffered similar injury through their purchase of Eco Science's securities at artificially inflated prices and a presumption of reliance applies.

64.   A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

65.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Eco Science who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
#### Against All Defendants

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Eco Science's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

68.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Eco Science's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

69.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Eco Science's financial well-being and prospects, as specified herein.

70.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Eco Science's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Eco Science and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

71.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants

was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

72.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Eco Science's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

73.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Eco Science's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Eco Science's securities during the Class Period at artificially high prices and were damaged thereby.

74.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Eco Science was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Eco Science

securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

75.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

77.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.     Individual Defendants acted as controlling persons of Eco Science within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. Defendant Giguiere was a major stockholder in Eco Science and, upon information and belief, had control and influence over the statements of the other Individual Defendants, including the false and misleading statements alleged herein.     Accordingly, Defendant Giguiere is liable under the doctrine of scheme liability.

79.     Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular

transactions giving rise to the securities violations as alleged herein, and exercised the same.

80.     As set forth above, Eco Science and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**THIRD CLAIM**
**Violation of Section 20(b) of The Exchange Act**
**Against Defendant Giguiere**

81.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82.     By his conduct as alleged above, Defendant Giguiere directly and indirectly acted through and used another person or entity to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

83.     In acting through and using another person or entity to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Defendant Giguiere acted intentionally, knowingly or with severe recklessness with respect to the truth.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  February 1, 2019

/s/  James E. Cecchi

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

-and-

Lesley F. Portnoy (LP-1941)
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340

*Attorneys for Lead Plaintiff*